COMMONWEALTH, by Insurance Commissioner, *vs.* MECHANICS' MUTUAL FIRE INSURANCE COMPANY. Samuel G. Reed, petitioner.

Suffolk. March 30. — Sept. 7, 1876. DEVENS & LORD, JJ., absent.

A person insured made an oral agreement with a mutual fire insurance company to renew his policies when they expired on October 1, 1872. The new policies were made, signed and entered upon the company's books as of that date, and remained in its office until after the great fire of November 9 and 10, 1872. The insured on November 14, 1872, called at the company's office, paid the premiums, gave the deposit notes dated October 1, 1872, and accepted the policies of the same date. The secretary of the company, in answer to his inquiries, said that in his opin-

ion the company had a large surplus, was sound and good and would go on. On November 23, 1872, the company was enjoined from going on with its business. The directors of the company voted to collect all premium notes, and levied an assessment on all policies outstanding on November 9 and 10, 1872. *Held*, on a petition in equity to compel the receivers to return the premiums, and to restrain them from collecting the deposit notes and the assessments laid on the policies, that, by his agreement and acceptance of the policies dated October 1, 1872, the policy holder stood in the same position and with the same liabilities as if he had taken his policies on that day. *Held, also*, that the statements of the secretary were merely the expression of an opinion, and not a misrepresentation of fact.

PETITION IN EQUITY by Samuel G. Reed against John E. Sandford and Solomon Hovey, receivers of the defendant cor-. poration, praying that they might be ordered to return the premiums received by the company upon certain policies, and might be restrained from collecting assessments laid on said policies, and the deposit notes given on the same. Hearing before *Morton*, J., who reported the case for the consideration of the full court in substance as follows :

The petitioner had several policies in the company, which expired on October 1, 1872, and on or before that date the petitioner and the company mutually agreed by parol that the old policies should be renewed in a larger sum than that previously insured. The company thereupon made out and signed the new policies, and entered them upon their books. The policies remained in the office until after the great fire of November 9 and 10, 1872. The company notified Reed after the fire, under a by-law, and in performance of their established rule, that if he did not pay the premiums and take the policies before November 20, the policies would be cancelled ; and Reed, on November 14, called at the office of the company, where he found the secretary ; and, in pursuance of the agreement of October 1, paid him the premiums, gave the deposit notes, dated October 1, and took the policies from him. The secretary said, in answer to the petitioner's inquiries, that the company, in his opinion, would have a surplus of $700,000 ; that the office, in his opinion, was sound and good, and would go on. The petitioner then took the policies from the secretary, and paid him the premiums and signed the deposit notes as aforesaid. The petitioner contended that this amounted to fraud in matter of law ; that he was induced to take the policies, on November 14, by false and fraudulent

representations as aforesaid, made by the secretary of the company. The judge found, upon the evidence, that no such false and fraudulent representations were made. Both the petitioner and company understood that the petitioner was insured after October 1, 1872, by the oral renewal of his policies.

On November 9 and 10, 1872, the company met with losses by the great fire, amounting to $1,324,574.14. The absolute assets of the company at the time, including deposit notes, were $1,115,938.72, and the statute liability of members was $985,424.12. The company was enjoined from going on with its business, November 23, 1872. On November 18, 1872, the directors, for the purpose of paying these losses, voted that all premium notes held by the company should be paid immediately; and the receivers have sued the petitioner, under this vote, upon his notes given as above. On April 23, 1873, the directors voted "that an assessment of fifty per cent. of premium and deposit be laid on all policies outstanding on November 9 and 10, 1873," for the purpose of paying the above mentioned losses. The receivers contend that the petitioner is liable to assessment under this vote, and have sued to collect the same.

Upon these facts, being of opinion that the petitioner was liable to the said assessment and upon his premium notes, the judge ordered a decree to be entered that the petition be dismissed; from which decree the petitioner appealed.

*O. W. Holmes, Jr.*, for the petitioner.

*A. A. Ranney*, for the receivers.

AMES, J. The petitioner, with full knowledge of the fact that the insurance company had suffered heavily by the fire, came to the conclusion to accept the new policies which had been prepared for him upon his application, upon or before the first day of the previous October. The meaning of his application was that he desired to renew and continue his former insurance. After making such inquiry as he saw fit, he paid the premiums and gave the deposit notes dated October 1, 1872, and accepted the policies of the same date. The effect of this arrangement, *primâ facie*, and if not explained or rebutted, would be that he fully consented to stand in the same relation to the company as if the entire transaction had occurred upon the day

of the date of the policies and the notes. His membership necessarily carried with it the contingent liability to assessment, and he must be considered as consenting that his membership should date back to that day. It was not an application for new or original insurance, beginning then for the first time, but was for continuous insurance to take effect from the expiration of his previous policies. It is true that his new policies were not literally outstanding at the date of the assessment, but he had at least applied for them. The agreement, that, when they were delivered to him, they should be considered as taking effect from their date, and should be treated as if they had been delivered at their date, was one which he had a perfect right to make. It was a necessary result or incident of such agreement, that the policies so accepted should be included in the assessment made subsequently to that date.

It is true that in accepting the policies he acted upon such information as he had obtained from the secretary of the company. But it is not charged that in giving such information the secretary was guilty of any intentional or fraudulent misrepresentation. We find nothing in the facts reported that amounts to constructive fraud, or fraud as matter of law. He merely expressed his opinion or belief that the company would be able to go on with its business, was sound and had a large surplus. However mistaken this belief has proved to be, we see no ground for holding that it was utterly without foundation, or was a belief which a slight examination would immediately have corrected. *Western Bank of Scotland* v. *Addie*, L. R. 1 H. L. Sc. 145. It had none of the qualities of a warranty. It was not the assertion of a matter of fact, and did not purport to be anything more than the expression of an expectation or probability. A mere estimate of this sort made in good faith is not such a representation of a matter of fact as to give the petitioner any valid claim against the receivers. See *Leather* v. *Simpson*, L. R. 11 Eq. 398.                                        *Decree affirmed.*